

FILED
JAN - 4 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| MOHAMMAD ASHRAF MOHAMMAD-OMAR, ) | |
| ) | |
| Petitioner, ) | Criminal No. 01:07cr425 |
| v. ) | Civil Action No.01:10-cv-1112 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Mohammad Ashraf Mohammad-Omar's ("Petitioner") Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody Under 28 U.S.C. § 2255.

In 2005 Safullah Nasrullah consulted with Petitioner on how to transport heroin outside Afghanistan. Nasrullah informed Petitioner about his international heroin-trafficking activities, as Nasrullah thought that, because of Petitioner's experience, Petitioner would have new ideas about the business of heroin. During this period, Petitioner served as Nasrullah's advisor.

Beginning in February 2006, the United States Drug Enforcement Agency ("DEA") had targeted Nasrullah. Because the DEA understood that Nasrullah was transporting heroin from Afghanistan through West Africa and then to the United States,

the DEA set up a sting operation involving Nasrullah. The DEA directed the informant to contact Nasrullah in Afghanistan and let him know that she had found a major West African heroin buyer. This buyer was, in actuality, a DEA undercover agent, Sam Gaye. Another DEA undercover agent, Lawrence Alexander, acted as the American heroin distributor.

In the spring of 2006, the informant contacted Nasrullah. Following this conversation, Nasrullah discussed the potential large-scale heroin sale with petitioner. Indeed, Nasrullah discussed with Petitioner how the conspirators would demand a 35% down payment from the DEA agents; in return, Nasrullah and Petitioner decided that someone would have to act as collateral following the receipt of the down payment, but before the delivery of the large quantity of heroin. Nasrullah and Petitioner also discussed that Petitioner would receive 15% of the profits from this transaction. In return for this share of the profits, Petitioner would travel to Ghana and wait with the undercover DEA agents until the heroin arrived, thus guaranteeing delivery of the heroin following receipt of the 35% down payment. Nasrullah estimated that the net profit from this transaction would be $1 million.

In July 2007, Nasrullah traveled to Ghana and met with undercover agent Gaye. At this meeting, Gaye confirmed with Nasrullah that Gaye wanted to buy heroin and distributed it in

2

the United States. Nasrullah told Gaye that Nasrullah was in Ghana "to represent . . . my colleagues and friends who are with me in heroin transactions." Agent Gaye and Nasrullah agreed that Nasrullah would transport 100 kilograms of heroin from Afghanistan to Ghana at a price of $17,000 per kilogram, for a total sale of $1.7 million. Consistent with the plan that Nasrullah had previously worked out with Petitioner and other co-conspirators, Nasrullah told Agent Gaye that Gaye had to pay a $595,000 down payment. Also consistent with the plan, Nasrullah told Agent Gaye that he and his partner (Petitioner) would travel to Ghana, where Petitioner would serve as collateral until Nasrullah could return to Afghanistan and organize the shipment from Afghanistan to Ghana. Nasrullah informed the undercover DEA agents that Petitioner knew everything about the business and would explain more in detail after he met Agent Gaye in Ghana.

Agent Gaye and Nasrullah also arranged for the agents to secure a sample of the heroin so that, as Agent Gaye explained to Nasrullah, Gaye could "send the sample to the United States and have it tested on the U.S. streets." To finalize the transaction, Nasrullah gave Agent Gaye his telephone number and an e-mail address. Before he left Ghana, Nasrullah called Petitioner and informed Petitioner that he had confidence in the success of the transaction. Petitioner responded that they

3

should discuss details of the transaction upon Nasrullah's return to Afghanistan, as Petitioner "didn't want to talk too much on [the] telephone."

When Nasrullah returned to Afghanistan, he met with Petitioner in order to outline the details of the transaction. They also met on other occasions to discuss the logistics of the deal. Further, Nasrullah stayed in contact with DEA agents via telephone and e-mail. In these conversations, they discussed how Nasrullah and Petitioner would need visas to return to Ghana. To facilitate this process, Nasrullah sent the agents a copy of Petitioner's passport. Also in these conversations, Nasrullah discussed when the agent-buyers would come to Afghanistan for their sample of heroin.

On September 8, 2007, Agent Alexander traveled to Kabul, Afghanistan to secure the sample heroin. Agent Alexander met with Nasrullah, and Nasrullah provided Agent Alexander with approximately 1.7 kilograms of heroin in return for $6,500. Petitioner knew of this meeting and its purpose.

Following the sale of the sample heroin to Agent Alexander, Nasrullah and Petitioner traveled to Accra, Ghana on October 22, 2007 to secure the $595,000 payment as previously agreed. Upon their arrival in Ghana, Nasrullah and Petitioner were arrested by DEA agents.

On October 18, 2007, a federal grand jury sitting in Alexandria, Virginia returned an indictment charging Petitioner with 1) conspiracy to import and distribute for the purpose of importation one kilogram or more of heroin, in violation of 21 U.S.C. §§ 952(a), 959, and 963, and 2) conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846.

Petitioner was tried by a jury on January 28 and 29, 2008. At the conclusion of the evidence, the jury convicted Petitioner on both counts. On May 17, 2008, the Court sentenced Petitioner to a term of imprisonment of 292 months on each count, to run concurrently with each other. This Court also ordered Petitioner to serve ten years of supervised release on each count, to run concurrently. On May 22, 2008, Petitioner filed a timely notice of appeal.

On April 27, 2009, the Fourth Circuit Court of Appeals issued its decision affirming the conviction and judgment of this Court. United States v. Mohammad-Omar, 323 Fed. Appx. 259, 262 (4th Cir. 2009) (unpublished). The Fourth Circuit found that there was an affirmative intention by the Congress for the extra-territorial application of 21 U.S.C. § 959(c), and there was a sufficient nexus between the defendant and his co-conspirators, such that the nexus was not arbitrary or fundamentally unfair. Id. at 261. On October 5, 2009, the United

States Supreme Court denied Petitioner's Petition for a Writ of Certiorari. Mohammad-Omar v. United States, 130 S. Ct. 282 (2009).

On May 7, 2010, Petitioner filed a letter motion with this Court for transcripts of the Court's jury instructions and the Government's closing arguments. This Court denied that motion for Petitioner's failure to state a particularized need for those transcripts. Petitioner then appealed that decision to the Fourth Circuit, which affirmed. United States v. Mohammad-Omar, 2010 U.S. App. LEXIS 18760 (4th Cir. Sept. 7, 2010) (unpublished). Petitioner filed the instant motion on October 4, 2010.

A petitioner collaterally attacking his sentence or conviction pursuant to 28 U.S.C. § 2255 bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. Petitioner's motion under 28 U.S.C. § 2255 asserts multiple allegations resting on the following four grounds of ineffective assistance of counsel: 1) trial counsel failed to seek a multiple conspiracy instruction to the jury; 2) trial counsel and appellate counsel failed to order a complete set of

6

trial transcripts; 3) the Government's failure to release Brady material; and 4) trial counsel's failure to hire an expert translator witness.

In Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel. The first part of the Strickland test addresses a counsel's professional competence, where "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. There is, however, a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689-90; see, e.g., United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997). In assessing whether a defendant has overcome this presumption, the analysis of counsel's performance typically must be comprehensive and not narrowly limited to a review of counsel's failings. The reasonableness of a counsel's actions often depends on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691. Ultimately, "[a] defendant is entitled to a fair trial, but not a perfect one, for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32 (1973) (internal quotations omitted).

To satisfy the second part of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A defendant must affirmatively prove prejudice that is "so serious as to have deprive[d] [him] of a fair trial." Id. at 687.

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. Because "[t]he defendant bears the burden of proving Strickland prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." Field v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Strickland, 466 U.S. at 697).

Petitioner first asserts that his trial counsel was ineffective when he failed to seek a jury instruction on multiple conspiracies. Petitioner did not, however, raise this issue in his appeal, and has thus procedurally defaulted on this claim. A § 2255 motion "may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982) (citations omitted).

Nevertheless, a procedurally defaulted claim may be considered on collateral review in limited circumstances. "In

order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, [Petitioner] must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing Frady, 456 U.S. at 167-68; United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). A showing of cause and actual prejudice may be excused if the petitioner can show actual innocence of the crime. Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992). "Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense or conviction, i.e., that petitioner did not commit the crime of which he was convicted." Mikalajunas, 186 F.3d at 494 (citing Sawyer, 505 U.S. at 339-41).

Petitioner implies that because his trial counsel was ineffective by not seeking a multiple conspiracy instruction to the jury, Petitioner can show cause for his procedural default. "To establish cause for [his] default based upon ineffective

9

assistance of counsel, [Petitioner] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." Id. at 493 (citing Murray, 477 U.S. at 488; Strickland, 466 U.S. at 687).

Petitioner cannot show his trial counsel was ineffective in failing to seek a jury instruction on multiple conspiracies. Having represented Petitioner during the jury trial, counsel concluded that the Government's evidence, as presented at trial, did not suggest that a request for a jury instruction on multiple conspiracies would be applicable or beneficial to Petitioner and therefore did not request such an instruction.

Petitioner's trial counsel's assessment based upon the evidence presented to the jury was correct. In a multiple transaction case over an extended period of time, a single conspiracy can be found where there are overlapping key actors, methods, and goals. United States v. Smith, 451 F.3d 209, 218 (4th Cir. 2006); United States v. Pratt, 351 F.3d 131, 140 (4th Cir. 2003). Such was the case where Nasrullah was supplying heroin to various buyers over a period of time to be imported into the United States. Nor does a single conspirator "need . . . be involved in every phase of [the] conspiracy to be deemed a participant" in a single, ongoing conspiracy. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988).

A "multiple conspiracy instruction is not required unless the proof at trial demonstrates . . . separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Kennedy, 32 F.3d 876, 884 (4th Cir. 1994) (citing United States v. Castaneda-Cantu, 20 F.3d 1325, 1333 (5th Cir. 1994)). Despite his theories to the contrary, the evidence shows that as early as 2005 Petitioner began working with Nasrullah as a consultant based on Petitioner's prior experience in importing heroin in the United States, for which he was convicted, and his connections to heroin manufacturers in Afghanistan. In 2007 Nasrullah decided to promote Petitioner from advisor to partner in Nasrullah's international heroin trafficking activities. Specifically, Nasrullah decided to partner with Petitioner because of his influence with government officials to help Nasrullah in bribing Nasrullah's way out of Kabul into Dubai. In addition, Petitioner was to serve as Nasrullah's partner by staying in Dubai and managing the future transactions of heroin from Afghanistan.

Petitioner also facilitated a heroin transaction by shadowing two of Nasrullah's couriers as they attempted to deliver heroin in Dubai, for which Petitioner was to receive 30% of the profits. Petitioner partnered with Nasrullah to sell 100 kilograms of heroin to DEA undercover agents for $1.7 million and accompanied Nasrullah to Ghana to facilitate the

11

transaction. The evidence before the jury was such that there was a single, wide-ranging conspiracy in which Petitioner played a significant role justifying his counsel's decision not to request a multiple conspiracy jury instruction. Nor can Petitioner show his actual innocence by clear and convincing evidence. Petitioner's motion on this ground should be denied.

Petitioner next asserts that his appellate counsel ineffectively represented him by failing to order a complete set of trial transcripts. Petitioner claims that he first discovered that he was not in possession of the transcripts of closing arguments and the Court's instructions to the jury when he began gathering materials to draft and file his motion pursuant to 28 U.S.C. § 2255. But Petitioner, his trial counsel, and his appellate counsel did not deem it necessary to acquire transcripts of closing arguments and jury instructions in order to address the issues they determined to appeal to the Fourth Circuit. Petitioner will not be the beneficiary of those strategy decisions by claiming his attorneys were ineffective without first detailing what benefit he would have derived from obtaining a transcript.

Petitioner has failed to indicate what issues he would have raised regarding the Court's instructions to the jury or counsel's closing arguments. On May 2, 2010, Petitioner sent a letter to the Court requesting a transcript of closing arguments

and jury instructions before deliberations. This Court denied that motion on May 27, 2010 because Petitioner had made no showing of any particularized need for transcripts as required by law. See 28 U.S.C. § 753(f).

In the instant motion, Petitioner argues that he needs a complete set of transcripts in order to evaluate what issues to raise before this Court. But "[a]n indigent is not entitled to a transcript at government expense without a showing of the need, merely to comb through the record in the hope of discovering some flaw." United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963). Petitioner speculates that this Court may have committed an error or that the Government's reference to personal opinion may have been improper. Petitioner's general speculation falls short of the particularized need he must show to obtain the transcripts he desires, and on this ground his motion should be denied.

Petitioner next claims that his trial counsel ineffectively represented him by not requesting that the Government release certain documents in the Petitioner's briefcase, which the Petitioner construes as relevant material under Brady v. Maryland, 373 U.S. 83, 86-88 (1963), and the Jencks Act, 18 U.S.C. § 3500. This argument is without merit.

On January 22, 2008, the Government signed a DEA release form for all of Petitioner's seized property. Having acquired

possession of that property, the Government sent a letter to Petitioner's counsel confirming their meeting so that counsel could view the luggage taken from Petitioner at the time of his arrest. On January 24, 2008, all of Petitioner's seized items were displayed by the Government's attorney to Petitioner's counsel at the United States Attorney's Office. Petitioner's counsel was free to make copies of any documents or photograph any item. There was no violation of the Government's <u>Brady</u> obligations, and on this ground his motion should be denied.

Petitioner next argues that his trial counsel acted ineffectively when she failed to hire an expert translator witness to translate to the Court a twelve-page statement handwritten in Farsi by Nasrullah. On January 24, 2008, the Government sent to Petitioner's counsel a letter written by Nasrullah enclosing the above-mentioned statement. There was no need for an expert translator, for the letter was in a language that was well understood by Petitioner. Petitioner could, and did, easily translate the letter for counsel, enabling counsel to ask Nasrullah questions about the letter on cross-examination. Petitioner, who has the letter and understands its contents, fails in his petition to quote any portion of the letter to support his theory that the letter was inconsistent with his involvement as a co-conspirator as detailed in the indictment and trial evidence.

14

On this issue, Petitioner has failed to meet his burden of showing that trial "counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 687-88, by failing to hire an expert translator. It appears that trial counsel did not believe it was in Petitioner's best interest to have the letter, which outlined Nasrullah's criminal activities, some of which were with Petitioner, exposed to the jury.

Nor has Petitioner satisfied the second prong of Strickland by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Petitioner has not shown that but for counsel's failure to request a transcript of closing arguments and the Court instructing the jury, the result of his trial would have been different. Therefore, Petitioner's motion should be denied on this ground.

Petitioner finally contends that he is entitled to an evidentiary hearing for this motion. This Court need not hold a hearing if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Whether a hearing is necessary "is best left to the common sense and sound discretion of the district

judges . . . ." Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970) (citing Machibroda v. United States, 368 U.S. 487, 495 (1962)). If the motion is brought before the judge that presided over the conviction, as is the case here, the judge may rely upon his recollections of previous events. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977) ("[T]he judge's recollection of the events at issue may enable him to summarily dismiss a § 2255 motion.").

An evidentiary hearing is only necessary when it is not "clear from the pleadings and the files and records that the prisoner is entitled to no relief . . . ." Raines, 423 F.2d at 530. Here, the pleadings, files, and records are sufficient for this Court to determine that Petitioner's unsupported, conclusory allegations entitle him to neither an evidentiary hearing nor § 2225 relief.

An appropriate order shall issue.

/s/<br>
Claude M. Hilton<br>
United States District Judge

Alexandria, Virginia
~~December       , 2010~~
Jan 4, 2011